Max BOWEN, Individually and d/b/a
Max Bowen Enterprises,
Appellant,

v.

Roy B. ROBINSON, Appellee.

No. 01–05–00605–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 3, 2006.

Rehearing Overruled Sept. 7, 2006.

8. *Harris,* 184 S.W.3d, at 806–07.

Charles W. Kelly, Kelly, Sutter, & Kendrick, Houston, TX, for Appellant.

Phillip R. Livingston, Deanna H. Livingston, Livingston & Livingston, L.L.C., Houston, TX, Russell Burwell, Burwell, Burwell & Nebout, Texas City, TX, for Appellee.

Panel consists of Justices TAFT, HIGLEY, and BLAND.

## OPINION

TIM TAFT, Justice.

Appellant, Max Bowen, individually and d/b/a Max Bowen Enterprises ("Bowen"), appeals from a judgment rendered upon a jury's award of damages for breach of contract in favor of appellee, Roy B. Robinson. We determine (1) whether the trial court abused its discretion by submitting Robinson's breach-of-contract claim to the jury because the cause of action was allegedly unpleaded; (2) whether Robinson's judicial admissions barred his recovery under his breach-of-contract claim; and (3) whether the trial court erred by entering judgment awarding breach-of-contract damages. We affirm the trial court's judgment.

### Background

In 2001, Bowen and Robinson had discussions about constructing a barge canal on Bowen's land. Bowen owned 300 acres of waterfront property in San Leon, Texas, near Dickinson Bay. Robinson had expertise in constructing barge canals and owned equipment to complete the project.

Bowen and Robinson discussed Robinson's building the canal with his equipment, expertise, and labor in exchange for a share of the proceeds from the sale of Bowen's 80 acres of improved property near Dickinson Bay ("the property"). On May 2, 2001, Donald Lancon, Bowen's project manager, submitted an application to the United States Department of the Army Corps of Engineers ("USDACE") on behalf of Bowen for the construction of the barge canal.[1] In December 2001, Lancon filed an application with the Texas General Land Office ("TGLO") for permission to cross Texas land when the USDACE permit was granted. In a letter dated February 26, 2002, the USDACE issued a permit for construction of the barge canal. On March 11, 2002, Lancon sent notice to the USDACE that the barge canal work had been started under the USDACE permit.

From December 2001 through April 2002, Robinson and his team were on the property, preparing the project site for the barge canal excavation by constructing an access road and scraping topsoil. Lancon was on the property daily while Robinson continued work on the property. On April 21, 2002, Lancon evicted Robinson from the property. By that point, Robinson had constructed an access road, prepared the site for excavation, fully constructed a dam, and started excavating the barge canal on the dry side of the dam.

Robinson testified that he and Bowen had agreed that, in exchange for Robinson's digging the channel, disposing of the dirt, and building a canal, Bowen would pay Robinson 40 percent of the profit from selling or leasing the property. Bowen estimated that the market value of the property when the barge canal was completed would be between $80,000 to $100,000 per acre. He also testified that he had expended approximately one million dollars in completing construction of the barge canal for the property. Robinson based his damages calculation on the expected benefit of his agreement with Bowen. Robinson testified that his range of benefit-of-the-bargain damages was from $887,000 to $1,596,000. The jury awarded Robinson breach-of-contract damages in the amount of $841,528 and quantum meruit damages in the amount of $46,643.50. The trial court entered judgment on Robinson's breach-of-contract cause of action.

## Sufficiency of Pleadings

In his first point of error, Bowen argues that "Robinson's pleaded legal theories do not support the judgment." In his fifth point of error, Bowen argues that "the court erred in submitting jury questions 1 and 2 because there was no pleading to support those issues."[2] In his sixth point of error, Bowen argues that "the trial court erred by entering judgment because it is unsupported by the pleadings." Because Bowen's first, fifth, and sixth points of error are related, we consider them together.

Specifically, Bowen contends that, during trial, Robinson "changed his story" from a claim of implied partnership to a claim that Robinson's contract was with Bowen, not the alleged partnership. Bowen

---

1. Lancon was paid $100,000 for obtaining the USDACE permit and managing the project. Lancon also had an agreement with Bowen for a ten-percent interest in the sale proceeds of Bowen's 300 acres in San Leon.

2. Jury question one of the trial court's charge asked, "Did [Robinson] and [Bowen] enter into an agreement for Robinson to construct a barge canal on real property that Bowen owned in San Leon, Texas?"

 Jury question two of the trial court's charge asked, "Did [Bowen] fail to comply with the agreement?"

contends that Robinson changed theories because Robinson belatedly realized that his claim that there was an implied partnership to which Bowen had orally agreed to transfer land was legally unenforceable under the statute of frauds.

■ We conclude that Robinson's petition was sufficient to give Bowen notice that the cause of action was for breach of an oral agreement with Bowen to construct a barge canal. The object and purpose of pleading is to give fair and adequate notice to the party being sued of the nature of the cause of action asserted against him. *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex.1981). "The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense." *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex.1982). The test of fair notice is "whether an opposing attorney of reasonable competence, with the pleadings before him, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant." *State Fid. Mortg. Co. v. Varner*, 740 S.W.2d 477, 479 (Tex.App.-Houston [1st Dist.] 1987, writ denied) (citation omitted). The "fair notice" requirement of Texas pleading relieves the pleader of the burden of pleading evidentiary matters with meticulous particularity. *Id.* at 480. In his live petition, Robinson asserted a claim entitled "Breach of Contract—Partnership," which provided,

8. ROY B. ROBINSON brings this cause of action for breach of contract against MAX BOWEN, individually and d/b/a MAX BOWEN ENTERPRISES and respectfully shows the Court as follows.

9. At the specific request, instance and urging of MAX BOWEN, a partnership was created and formed by and between MAX BOWEN, individually and d/b/a MAX BOWEN ENTER-PRISES and ROY B. ROBINSON. As a result of that partnership, ROY B. ROBINSON acquired real, beneficial and present interests in all property contributed to the partnership including real property. In April 2002, MAX BOWEN, sought to unilaterally terminate the partnership by evicting ROY B. ROBINSON from partnership property and denying the existence of a partnership any contractual agreement with ROY B. ROBINSON.

In his live petition, Robinson also asserted a claim entitled "Breach of Contract—Construction," which provided,

11. ROY B. ROBINSON brings this cause of action for breach of contract against MAX BOWEN, individually and d/b/a MAX BOWEN ENTERPRISES and respectfully shows the Court as follows.

12. Beginning on or about December 2001, the partnership consisting of MAX BOWEN retained the services of ROY ROBINSON for the purpose of constructing a slip on real property owned for the benefit of the partnership. From December 2001, through April 2002, ROY ROBINSON diligently performed services and provided valuable goods and materials for the construction of the slip. However, prior to completion of the slip, MAX BOWEN unilaterally evicted ROY ROBINSON from the partnership property and informed that his services were no longer required for the construction of the slip. During the period of construction, ROY ROBINSON provided equipment, materials, labor and expertise in an aggregate amount exceeding the minimum jurisdictional limits of this Court. The improper termi-

nation of the contract to excavate and complete the slip caused ROY ROBINSON actual damages for which he seeks recovery by this action.

Robinson's petition was sufficient to give Bowen notice that Robinson was asserting a cause of action for breach of an oral agreement to construct a barge canal in addition to a breach-of-partnership claim. The trial court thus did not err in submitting jury questions one and two, and Robinson's pleadings supported the judgment rendered.

We overrule Bowen's first, fifth, and sixth points of error.

### Judicial Admissions

In his second point of error, Bowen argues that "Robinson's judicial admissions bar his claims for breach of construction contract."

#### A. Liability

As to liability, Bowen argues that Robinson judicially admitted three times that the contract was with the partnership, not Bowen;[3] therefore, the jury's affirmative answer to whether Robinson and Bowen entered an agreement cannot stand.

▮▮▮▮ Robinson's statements were not judicial admissions. A judicial admission is a formal waiver of proof that dispenses with the production of evidence on an issue. *Lee v. Lee*, 43 S.W.3d 636, 641 (Tex.

App.-Fort Worth 2001, no pet.). A judicially admitted fact is established as a matter of law, and the admitting party may not dispute it or introduce evidence contrary to it. *Id.; see Roosevelt v. Roosevelt*, 699 S.W.2d 372, 374 (Tex.App.-El Paso 1985, writ dism'd). This rule is based on the public policy that it would be absurd and manifestly unjust to permit a party to recover after he has sworn himself out of court by a clear and unequivocal statement. *U.S. Fid. & Guar. Co. v. Carr*, 242 S.W.2d 224, 229 (Tex.Civ.App.-San Antonio 1951, writ ref'd); *Lee*, 43 S.W.3d at 641; *Roosevelt*, 699 S.W.2d at 374. A judicial admission must be a clear, deliberate, and unequivocal statement, and it occurs when an assertion of fact is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex.2000).

Here, Robinson asserted in his petition claims for breach of contract of a partnership agreement and, alternatively, breach of contract of a construction contract. Rule 48 of the Texas Rules of Civil Procedure allows a claimant to plead in the alternative, stating[1] as many separate claims or defenses as he has regardless of consistency and whether based upon legal or equitable grounds or both. *See* Tex.R. Civ. P. 48. Robinson's assertions in his petition, response to requests for disclosure, and response to Bowen's interrogato-

---

**3.** Bowen relies on the following statements of Robinson in support of his argument. In his first amended petition, Robinson alleged that "[b]eginning in or about December 2001, the partnership consisting of MAX BOWEN retained the services of ROY ROBINSON for the purpose of constructing a slip on real property owned for the benefit of the partnership." In his response to requests for disclosure, Robinson asserted that "[i]n an effort to develop the real property for commercial and residential use, MAX BOWEN entered into a partnership with ROY B. ROBINSON and Donald Lancon. Each party contributed valuable consideration for their [sic] interest in the partnership." In his answer to interrogatory number one, Robinson responded that "Robinson and [Bowen] entered into a verbal agreement. By the terms of that verbal agreement, [Bowen] was to donate his interest in certain real property located in San Leon, Galveston County, Texas to a partnership for the purpose of developing that property for sale."

ries did not constitute binding judicial admission because they were not clear and unequivocal statements, given Robinson's alternative pleading. *See Auld,* 34 S.W.3d at 905 (holding that judicial admission occurs when assertion of fact is conclusively established in live pleadings, making introduction of other pleadings or evidence unnecessary). Moreover, the existence of a partnership agreement between Bowen and Robinson was a contested issue at trial; in fact, Bowen stated in his affidavit and took the position at trial that he had not entered into any partnership agreement with Robinson.

## B. Damages

As to damages, Bowen argues that "[he] was entitled to rely on Robinson's pleadings, and since Robinson is bound by those pleadings as a matter of judicial admission, Robinson is limited to recovering his out-of-pocket expenses for 'equipment materials, labor and expertise.'"

Robinson's pleading coupled specific damage allegations with particular causes of action. Under his breach-of-construction-contract claim, Robinson pleaded that, "[d]uring the period of construction, ROY ROBINSON provided equipment, materials, labor and expertise in an aggregate amount exceeding the minimum jurisdictional limits of this Court. The improper termination of the contract to excavate and complete the slip caused ROY ROBINSON actual damages for which he seeks recovery by this action." This was an out-of-pocket theory of damages. Under his breach-of-partnership claim, Robinson pleaded that the breach "caused actual damages to ROY B. ROBINSON in an amount in excess of the jurisdictional limits of this Court for which ROBINSON seeks recovery by the action. Those damages included, but are not limited to, the reasonably anticipated profits of the partnership and Robinson's partnership interest value." This was a benefit-of-the-bargain theory of damages.

The jury was charged only on the breach-of-construction-contract claim, not on the breach-of-partnership claim. The charge instructed the jury to consider only the following element of damages, if any: "The amount [Bowen] agreed to pay [Robinson], less expenses [Robinson] saved by not completing the construction and excavation of the barge canal." This was a benefit-of-the-bargain theory of damages. During the charge conference, Bowen objected that "the instruction to Question 4[was] improper because it submits a benefit-of-the-bargain measure of damages that Plaintiff did not allege in its [sic] pleadings and the issue was not tried by consent." Additionally, Bowen objected that question four of the jury charge was improper because Robinson sought to recover for loss of contractual profits that he had not alleged in his pleadings and that Bowen did not try by consent. The trial court overruled Bowen's objections.

On appeal, Bowen does not complain about charge error. Bowen does not mention or cite to his objection to the trial court's submitting a benefit-of-the-bargain measure of damages in either his amended or reply briefs. Nor does Bowen cite to authority to explain how the trial court improperly charged the jury on damages.[4]

---

4. Bowen cites to various authorities that do not involve charge error. *See* Tex.R. Civ. P. 47 (providing that pleading must set forth claim for relief that contains statements of cause of action sufficient to give fair notice of claim involved, statement that unliquidated damages sought are within jurisdictional limits of court, and demand for judgment for relief to which party is entitled); *Boyles v. Kerr,* 855 S.W.2d 593, 601 (Tex.1993) (holding that plaintiff cannot recover for causes of action when there is nothing contained in petition to

Rather, Bowen argues that "Robinson judicially admitted that [the] value of his 'equipment, materials, labor and expertise' was $46,463.50. Having specifically claimed that his damages for breach of contract was the value of his goods, labor, equipment and sources, he cannot now expand that claim to an entitlement to proceeds from the sale of land which never occurred." Accordingly, we consider only whether Robinson's allegation that his damages consisted of expenses for equipment, materials, labor, and expertise that he expended was a judicial admission because Bowen does not complain on appeal that the trial court improperly charged the jury on damages. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993) (holding that courts of appeals may not reverse judgment of trial court for reason not raised in point of error).

■ Robinson's statement in his pleading did not constitute a judicial admission. *Cf. Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex.1983) (holding that assertions of fact, not pled in alternative, in live pleadings of party are regarded as formal judicial admissions and any fact admitted is conclusively established in case

without introduction of pleadings or presentation of other evidence).

In order for a pleading to be deemed a judicial admission, it must be deliberate, clear, and unequivocal. *Kirby Forest Indus. v. Kirkland*, 772 S.W.2d 226, 233 (Tex.App.-Houston [14th Dist.] 1989, writ denied). From our reading of Robinson's petition, we conclude that the statement at issue is not clear or unequivocal. *See Field v. AIM Mgmt. Group, Inc.*, 845 S.W.2d 469, 472 (Tex.App.-Houston [14th Dist.] 1993, no writ) (holding that conflicting allegations are not clear or unequivocal and are insufficient to be judicial admissions).

■ Under Texas law, a party is not required to plead his measure of damages. *Rowan Co.'s, v. Transco Exploration Co.*, 679 S.W.2d 660, 665 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.). Rule 47 of the Texas Rules of Civil Procedure requires only a short and concise statement of a cause of action (*i.e.*, breach of a specific contract) and damage from such breach.[5] For example, the rule does not require an allegation of the particular contract provision that allows or precludes recovery. *Pringle v. Nowlin*, 629 S.W.2d 154, 157 (Tex.App.-Fort Worth 1982, writ

give fair notice to defendant); *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex.1979) (holding that plaintiff may not sustain favorable judgment on unpleaded causes of action, in absence of trial by consent); *Oil Field Haulers Ass'n, Inc. v. R.R. Comm'n*, 381 S.W.2d 183, 191 (Tex.1964) (holding that plaintiff may not sustain favorable judgment on unpleaded causes of action, in absence of trial by consent); *Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 280–81 (Tex.App.-Houston. [14th Dist.] 1999, pet. denied) (holding that trial court erred by finding that disclaimer barred plaintiff's claim for breach of implied warranty of merchantability because defendant did not file proper pleading alleging affirmative defense of disclaimer and matter was not tried by consent); *C & H Transp. Co. v. Wright*, 396 S.W.2d 443, 446 (Tex.Civ.App.-

Tyler 1965, writ ref'd n.r.e.) (holding that plaintiff's petition must set forth sufficient facts to give fair notice to defendant of basis of his claim and relief that he is seeking); *Hollingsworth v. Northwestern Nat. Ins. Co.*, 522 S.W.2d 242, 247 (Tex.Civ.App.-Texarkana 1975, no writ) (holding that because plaintiff's evidence tended to prove entirely different cause of action from that pleaded, defendant's motion for instructed verdict should have been granted).

5. Rule 47 provides that "[r]elief in the alternative or several different types may be demanded; provided, further, that upon special exception the court shall require the pleader to amend so as to specify the maximum amount claimed." *See* TEX.R. CIV. P. 47.

ref'd n.r.e.); *Parker v. McGinnes*, 594 S.W.2d 550, 552 (Tex.Civ.App.-Waco 1980, no writ); *Adams v. Morris*, 584 S.W.2d 712, 719 (Tex.Civ.App.-Tyler 1979, no writ); *Seureau v. Mudd*, 515 S.W.2d 746, 748 (Tex.Civ.App.-Houston [14th Dist.] 1974, writ ref'd n.r.e.); *Aetna Cas. & Sur. Co. v. Clark*, 427 S.W.2d 649, 656 (Tex.Civ. App.-Dallas 1968, no writ).[6]

Neither is the plaintiff required to allege the applicable legal measure of damages. *Rowan Co.*, 679 S.W.2d at 665. If the facts establishing the cause of action are sufficiently set forth in the pleadings, and if they are supported by the evidence, then the court must properly instruct the jury as to the measure of damages. *Willis v. Donnelly*, 118 S.W.3d 10, 28 (Tex.App.-Houston [14 Dist.] 2003, pet. filed); *Dixie Fire Ins. Co. v. Mc-Adams*, 235 S.W.2d 207, 212 (Tex.Civ.App.-Fort Worth 1950, writ dism'd). When a party erroneously alleges the measure of his damages, and the competent testimony reveals the proper measure, the court may charge the jury on the proper measure. *McAdams*, 235 S.W.2d at 212; *Willis*, 118 S.W.3d at 28.

Taken in the context of the entire pleading, the measure of damages was pleaded in the alternative, thereby placing Bowen on notice to defend against both measures, and Robinson presented evidence at trial of both his out-of-pocket damages and benefit-of-the bargain damages. Accordingly, we hold that Robinson was not limited by judicial admission or inadequate pleading to recovering his out-of-pocket expenses for "equipment materials, labor and expertise."

We overrule Bowen's second point of error.

### Damages

In his third point of error, Bowen argues that "Robinson's damages testimony is too speculative to support the jury's award for damages." In his fourth point of error, Bowen argues that "Robinson failed to prove that his construction damages were reasonable and necessary."

### A. Sufficiency of the Evidence

Bowen specifically contends that "[e]ven if Robinson had a claim for loss of profits he failed to prove it" because his testimony was too speculative to show that any alleged partnership would have made any profits. We construe Bowen's argument to be that the evidence is legally insufficient to support the jury's finding that Robinson sustained $841,528 in damages because those damages allegedly contained lost profits that were not sufficiently proved.

### 1. Standard of Review and the Law

A reviewing court must view the evidence in the light most favorable to the verdict, indulging every reasonable inference that supports it, but the court may not disregard evidence that allows only

---

**6.** Most of the cited cases adopt the rule found in Texas Jurisprudence:

> In order for a petition to sufficiently allege a claim for damages it must provide fair and adequate notice of the facts upon which the pleader's claim is based, and the opposing party must be supplied with information sufficient to enable him or her to prepare a defense. The petition must set forth the grounds on which the action is based and what is sought to be recovered, so that the defendant may be apprised of the nature of the plaintiff's demand.... Determining the measure of damages under the pleadings is a matter of law for the court. The plaintiff need not allege the measure of damages in order to recover them. Rather, the petition must factually plead a cause of action from which the court can determine the proper measure.

28 Tex. Jur.3d *Damages* §§ 204–05 (1996).

one inference. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. "[L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* "A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003) (citation omitted).

With respect to damages in breach-of-contract cases, the general rule is that "the complaining party is entitled to recover the amount necessary to put him in as good a position as if the contract had been performed." *Smith v. Kinslow,* 598 S.W.2d 910, 912 (Tex.Civ.App.-Dallas 1980, no writ) (citation omitted). Put another way, in a breach-of-contract case, the normal measure of damages is just compensation for the loss or damage actually sustained, commonly referred to as the benefit of the bargain. *See SAVA Gumarska in Kemijska Industria D.D. v. Advanced Polymer Sciences, Inc.,* 128 S.W.3d 304, 325 n. 6 (Tex.App.-Dallas 2004, no pet.). The benefit-of-the-bargain measure of damages may include reasonably certain lost profits. *See Cmty. Dev. Serv., Inc. v. Replacement Parts Mfg., Inc.,* 679 S.W.2d 721, 725 (Tex.App.-Houston [1st Dist.] 1984, no writ).

Lost profits are damages for the loss of net income to a business and, broadly speaking, reflect income from lost business activity, less expenses that would have been attributable to that activity. *Miga v. Jensen,* 96 S.W.3d 207, 213 (Tex. 2002); *see generally Capital Metro. Transp. Auth. v. Cent. of Tenn. Ry. & Navigation Co.,* 114 S.W.3d 573, 581–82 & n. 7 (Tex.App.-Austin 2003, pet. denied) (considering both income projections and specific expenses when evaluating proof of lost profits). Lost profits may be recovered for money that would have been made if the bargain had been performed as promised. *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 50 (Tex.1998). In order to recover lost profits, they must be proved with reasonable certainty and competent evidence. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994) (citation omitted).

Lost profits are recoverable if the evidence shows that the loss of profits was a material and probable consequence of the breach complained of and the amount due is shown with sufficient certainty. *Cmty. Dev. Serv., Inc.,* 679 S.W.2d at 725. Generally, lost profits are properly calculated by deducting the costs of the injured party's performance supported by data from the actual contract price. *Id.* "However, a witness may also prove lost profits by testifying as to what his profit would have been, based on his knowledge of the cost of performance of each element of the contract and subtracting the total of such costs from the contract price." *Id.*

### 2. Analysis

Bowen complains on appeal that there was no evidence from qualified and designated experts regarding the market value of the property to support the jury's award

of lost-profit damages.[7] Specifically, Bowen contends that "Robinson, who was not designated as an expert on damages, based his fantastic opinions regarding the anticipated partnership profits on other sales of his own property in *1982—nearly 20 years before the relevant transaction!* There was no testimony as to what the *relevant* property was worth in either 2002 or 2004." (Emphasis in original). However, Robinson was designated as an expert witness and was expected "to testify from his personal knowledge and from his years of experience in marine construction and excavation about the methodology employed in work performed, the scope of the work, the reasonableness of the fees charged, the value of the services rendered and such other matters reasonably related to the work made a part of the claims of this lawsuit."

 Robinson did not have to prove the lost profits by an exact calculation. *See Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.,* 877 S.W.2d 276, 279 (Tex.1994). However, Robinson had to do more than show that he had suffered some lost profits. *See id.* The amount of Robinson's loss had to be shown by competent evidence with reasonable certainty. *See Id.* Competent evidence of lost profits relating to property can be proved by the testimony of an expert or the owner of the property. *See Cmty. Pub. Serv. Co. v. Gray,* 107 S.W.2d 495, 498 (Tex.Civ.App.-El Paso 1937, no writ). "The requirement of 'reasonable certainty' in the proof of lost profits is intended to be flexible enough to accommodate the myriad circumstances in which claims for lost profits arise." *SW Battery Corp. v. Owen,* 131 Tex. 423, 115 S.W.2d 1097, 1099 (1938). "What constitutes reasonably certain evidence of lost profits is a fact intensive determination. At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 84 (Tex.1992); *see, e.g., Pena v. Ludwig,* 766 S.W.2d 298, 304 (Tex.App.-Waco 1989, no writ); *Frank B. Hall & Co. v. Beach, Inc.,* 733 S.W.2d 251, 258 (Tex. App.-Corpus Christi 1987, writ ref'd n.r.e.); *Keller v. Davis,* 694 S.W.2d 355, 357 (Tex. App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Automark of Tex. v. Disc. Trophies,* 681 S.W.2d 828, 830 (Tex.App.-Dallas 1984, no writ). "Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates." *Holt Atherton Indus., Inc.,* 835 S.W.2d at 84.

 The record shows that Robinson had extensive experience in dealing with the sale of land in the Dickinson Bay area. Robinson's testimony included objective facts and figures from his past experience with property sales and construction projects in the general area, as well as the property's likely market value after completion of the barge canal project. *See Holt Atherton Indus., Inc.,* 835 S.W.2d at

---

**7.** Robinson argues on appeal that Bowen's discussion of lost profits is "irrelevant." However, contrary to Robinson's argument, the agreement necessarily included lost profits because it included the splitting of proceeds from the property's sale, *i.e.* money that "would have been made if the bargain had been performed as promised." *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 50 (Tex.1998). The jury was instructed to consider the benefits that Bowen had agreed to pay, less the expenses that Robinson had saved by not having completed the construction of the barge canal, *i.e.,* the 40% of the net proceeds of the sale of the property, less the $700,000 that were expenses that Robinson did not have to incur because Bowen had prevented him from completing the construction of the barge canal.

84 (requiring that "opinions or estimates of lost profits be based on objective facts, figures, or data from which the amount of lost profits can be ascertained."). Specifically, Robinson testified that he had owned land on Dickinson Bayou beginning in 1974, that he had dug a permitted channel in 1979 and 1980, that he had sold four acres in 1983 for $85,000 per acre, that he had started digging a permitted channel in 1983, that he had sold five acres in 1988 for $400,000, that he sold five acres in 1996 or 1997 for $400,000, and that the property would sell for between $75,000 to $80,000 per acre.

Further, Robinson's testimony of the property's market value was undisputed. Bowen, the *owner* of the property, testified that the market value of his property upon completion of the barge canal was estimated to be between $80,000 to $100,000 per acre. It is well-settled that the "owner of the property can testify to its market value, even if he could not qualify to testify about the value of like property belonging to someone else." *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex.1984) (citation omitted). Thus, the jury properly could have considered Bowen's testimony regarding the market value of his own property. *See Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 669 (Tex.1996).

Viewed in the light most favorable to the verdict, the evidence showed that Robinson testified that Bowen had agreed to pay him 40 percent of the total sales price of the property, less expenses. The testimony was undisputed that the market value of the property upon completion of the barge canal ranged from $75,000 to $100,000.[8] Bowen testified that he expended approximately one million dollars in constructing the barge canal for the property. Robinson testified that the expenses that he did not have to incur because Bowen had prevented him from completing the construction of the barge canal on the property totaled $700,000. The evidence thus supported that the range of benefit-of-the-bargain damages was from $887,000[9] to $1,596,000. The jury awarded Robinson breach-of-contract damages in the amount of $841,528. The jury's finding was within the range of the testimony regarding the amount of damages incurred. *See State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313, 321 (Tex. App.-San Antonio 2002, pet. denied).

Accordingly, we hold that the evidence was legally sufficient to support the jury's finding that Robinson sustained $841,528 in damages.

We overrule Bowen's third point of error.

## B. Reasonableness and Necessity

Bowen next argues that "[a]lthough the Mechanics and Materialmen's lien[10] was offered as an exhibit at trial, there is no

---

8. Bowen testified that he estimated that the market value of the property when the barge canal was completed to be between $80,000 to $100,000 per acre.

9. To calculate this amount, Robinson used the smallest market valuation presented by Bowen, which was $75,000 per acre; subtracted all of Bowen's anticipated and actual expenses; multiplied that number by 40%, which totaled $1,587,000; and subtracted $700,000, which represented expenses that Robinson did not have to incur because Bow-

en had prevented him from completing the construction of the barge canal.

10. Robinson filed an affidavit claiming a mechanic's and materialman's lien for labor and materials furnished for the improvement of the property. Robinson averred that "[t]he amount due, owing and unpaid to claimant for such labor and/or materials is $46,463.50, which is true, correct, and just, with all just and lawful offsets, payments, and credits known to affidavit [sic] allowed."

evidence that the amounts set forth in that lien and the accompanying invoices were reasonable." Bowen challenges the jury's answer to question number eight, in which the jury found that the reasonable value of Robinson's quantum meruit claim to be $46,463.50.

However, the judgment did not award Robinson damages on the alternative quantum meruit claim. Accordingly, we need not address Bowen's fourth point of error.

### Conclusion

We affirm the judgment of the trial court.